AFFIDAVIT

I, Robert Estes, depose and state the following:

1. I am a Detective Sgt. with the Essex, Vermont Police Department, currently assigned to the Drug Enforcement Administration (DEA) Task Force at the Burlington, Vermont Resident Office. I served with the Task Force from 2002 to 2004, and 2011 to present. I have participated in investigations relating to possession, distribution and manufacturing of controlled substances, including crack, cocaine and heroin. I have also conducted and/or participated in surveillances, the execution of search warrants, debriefings of informants and reviews of recorded conversations. Through my training, education and experience, I have become familiar with the manner and methods of illegal narcotic distribution.

2. I submit this affidavit in support of a federal criminal complaint charging that, on or about July 7, 2015, in Vermont and elsewhere, Franklyn STERLING, knowingly and intentionally distributed heroin, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Because this affidavit is submitted for the limited purpose of establishing probable cause for a search warrant, I have not set forth each and every fact learned during the course of the investigation. Where a conversation is described in this Affidavit, it is described in substance, not verbatim.

3. On January 17, 2015, I was contacted by Vermont Border Patrol Intelligence Agent Bradley Audette. Agent Audette informed me that he had debriefed a cooperating source (CS) regarding a large-scale heroin and cocaine trafficker named Franklyn STERLING. Agent Audette advised that the CS was currently seeking consideration on pending felony state charges for assault and robbery. The CS was ultimately convicted of those charges, but was released from incarceration due to CS's cooperation. The CS also has felony convictions for burglary and

1

grand larceny. Agent Audette advised that, according to the CS, a male known as Franklyn STERLING was supplying the CS with large amounts of cocaine and heroin. According to the CS, STERLING had been getting drugs from Panama, and shipping the CS cocaine and heroin through the U.S. Postal Service. CS stated STERLING was currently living in New York City. The CS also stated that he had previously met with STERLING at STERLING's residence in Brooklyn, NY. At the time of this debriefing, CS informed Agent Audette that CS recently posted the CS's new cell phone number on Facebook. Agent Audette stated that CS said that STERLING contacted the CS via Facebook. CS also stated that CS had not heard from STERLING in several months, but that STERLING recently texted and called the CS, reaching CS on the number CS posted on Facebook. Agent Audette advised that the CS stated CS could contact STERLING and have packages of cocaine or heroin shipped to Vermont. According to the CS, STERLING trusted CS and would want to do business again because the CS made STERLING a lot of money in the past. Agent Audette advised that the CS told him that STERLING had a brother who was also involved in drug trafficking. Agent Audette advised that the number STERLING used to contact the CS was (718) 524-2217 (the TARGET CELL PHONE). Agent Audette showed the CS a prior booking photo of STERLING and CS positively identified the individual in the photo as Franklyn STERLING.

4.      On January 18, 2015, DEA Task Force Officer (TFO) Daniel Merchand searched DEA databases and located an individual Franklyn STERLING-PALACIO with DOB 8/26/1982. That date of birth matches the date of birth of Franklyn STERLING. TFO Merchand learned that STERLING is Panamanian and that he was involved in a criminal narcotics case from 1999-2001 in New York City. TFO Merchand also learned that, around the same time, STERLING

was arrested following seizure of 26 kilograms of cocaine from his luggage in Panama City; prior to the arrest, he had been attempting to travel from Panama City to Newark, New Jersey.

5. In January 2015, the CS had contact with Franklyn STERLING regarding the possible shipment of narcotics to Vermont. The CS and STERLING made plans for STERLING to send a quantity of narcotics through the U.S. Mail to the CS, with CS contacting STERLING on the TARGET CELL PHONE. STERLING told the CS that he would let him know when a package was sent. I provided the CS with the cellular telephone it used to communicate with STERLING. After the CS used it to communicate with STERLING, I took custody of it, and began posing as the CS and texting with STERLING regarding the drug shipment.

6. For all phone contact with STERLING discussed in this Affidavit, whether between STERLING and I or STERLING and the CS, STERLING communicated using the TARGET CELL PHONE.

7. On January 23, 2015, STERLING texted the cellular phone maintained by me, stating that a package had been sent, and would be at the Vermont address provided by the CS to Sterling on Saturday (January, 24, 2015). I contacted U.S. Postal Inspector Dave Mooney and asked that he put a watch on any packages coming to the address provided by the CS to Sterling. On January 24, 2015, U.S. Postal Inspector Mooney contacted me and advised that they had intercepted a package that was going to the address the CS provided to STERLING. On January 24, 2015, I met with Inspector Mooney and took possession of the package. The package was a U.S. Postal box, with Tracking Number EK692753062US. The sending location (return address) listed on the package was Brooklyn, NY, the destination location was the address provided by the CS. (For all packages discussed in this Affidavit, the listed return address was in Brooklyn, NY.). The CS completed a consent to search form for the package, allowing agents to search it.

8. Upon opening the package agents observed two plastic grocery bags, with each bag containing miscellaneous food items, such as a loaf of soft wheat bread, cans of Vienna Sausage, cans of Star Kist tuna, bags of Vegie Straws, boxes of Cup Noodle, box of Rice Roni, and a jar of Skippy Peanut Butter. Inside the Skippy jar agents located a plastic bag. Inside the plastic bag was another plastic bag. The second plastic bag contained 39 knotted plastic bags, each containing what appeared to be cocaine.

9. A field test kit was used to test a small sample of the suspected cocaine. The field test kit was for cocaine salts and base, and the results were positive.

10. Using the TARGET CELL PHONE, STERLING provided me with his TD Bank account number and the correct spelling of his name (Franklyn STERLING). For each shipment of drugs by STERLING discussed in this Affidavit, law enforcement deposited funds into his TD Bank account to pay for the drugs.

11. During the last week of January 2015, acting in an undercover capacity, I had cellular contact with Franklyn STERLING regarding the possible shipment of narcotics to Vermont. I had contact with STERLING via text messages. I agreed to accept a drug shipment sent by STERLING through the U.S. Postal Service to Vermont.

12. On January 29, 2015, STERLING texted the cellular phone maintained by me, stating that a package had been sent, and would be at the Vermont address previously provided by the CS to STERLING (the destination of the previously intercepted package). I contacted U.S. Postal Inspector Dave Mooney and asked that he put a watch on any packages coming to that address.

13. On January 30, 2015, U.S. Postal Inspector Mooney contacted me and advised that Postal had intercepted a package bound for that address. I met with Inspector Mooney and took

possession of the package. The package was a U.S. Postal box, with Tracking Number EK320660875US. The sending location was Brooklyn, NY, the destination location was the address previously provided by the CS to STERLING. A consent to search form was completed by CS, allowing agents to search the received package.

14. Upon opening the package, agents observed two plastic grocery bags, each bag containing miscellaneous food items, such as a loaf of wheat bread, cans of Vienna Sausage, cans of Star Kist tuna, bag of pork rinds, boxes of Cup Noodle, and a jar of Jif peanut butter. Inside the Jif jar agents located a plastic bag. Inside the plastic bag was another plastic bag. The second plastic bag contained 78 knotted plastic bags, each containing what appeared to be cocaine.

15. A field test kit was used to test a small sample of the suspected cocaine. The field test kit was for cocaine salts and base, and the results were positive.

16. In mid-June 2015, I had cellular contact with STERLING regarding the possible shipment of heroin to Vermont. At this point, I told STERLING I was CS's brother and I continued to pose as CS's brother in my communications with him going forward. I had contact with STERLING via text messages and a recorded cellular telephone call. STERLING made plans with me to send a quantity of heroin to Vermont. On June 15, 2015, STERLING contacted me and stated that a package had been sent, and would be at the same address to which STERLING previously shipped cocaine. I contacted U.S. Postal Inspector Dave Mooney and asked that he put a watch on any packages bound for that address.

17. On June 16, 2015, U.S. Postal Inspector Mooney contacted me and advised that Postal had intercepted a package headed for that address. On June 16, 2015, I met with Inspector Mooney and took possession of the package. The package was a U.S. Postal box with Tracking

Number EF135331822US. The sending location was Brooklyn, NY, and the destination location was the address to which STERLING previously shipped drugs.

18. Upon opening the package, agents observed two plastic grocery bags, each containing miscellaneous food items, such as a loaf of bread, a bag of potato chips, a box of pasta, cans of Vienna Sausage, boxes of Cup Noodle, and a jar of Jif peanut butter. Inside the Jif jar agents located a plastic bag. Inside the plastic bag was another plastic bag. The second plastic bag contained an object wrapped in green shrink wrap. Inside the green shrink wrap was another plastic bag which contained suspected heroin.

19. A field test kit was used to test a small sample of the suspected heroin. The field test kit was for heroin, and the result was positive.

20. In the days leading up to June 23, 2015, acting in an undercover capacity, I had cellular contact with Franklyn STERLING regarding the possible shipment of heroin to Vermont. I had contact with STERLING via text messages and a recorded cellular telephone call. STERLING made plans with me to send a quantity of heroin to Vermont. On June 23, 2015, STERLING contacted me and stated that a package had been sent, and would be at the address to which STERLING previously sent drugs. I contacted U.S. Postal Inspector Dave Mooney and asked that he put a watch on any packages bound for that address.

21. On June 24, 2015, U.S. Postal Service intercepted a package that was going to that address. Essex Police Department Officer John Ruttenberg met with USPS plant manager Jeffrey Frett and took possession of the package. The package was a U.S. Postal box with Tracking Number EK930892442US. The sending location was Brooklyn, NY, the destination location was the address to which STERLING previously sent drugs.

22. DEA Special Agent Brandon Hope and I opened the package and observed two plastic grocery bags, each containing miscellaneous food items, such as a loaf of bread, a box of macaroni and cheese, cans of tuna fish, cans of Vienna Sausages, boxes of Cup Noodle, and a jar of Jif peanut butter. Inside the Jif jar agents located a plastic bag. Inside the plastic bag was another plastic bag. The second plastic bag contained another plastic bag. Inside the third plastic bag was a brown colored powder, suspected to be heroin.

23. A field test kit was used to test a small sample of the suspected heroin. The field test kit was for heroin, and the result was positive.

24. In early July 2015, STERLING contacted me using the TARGET CELL PHONE and advised he would be sending me an ounce of "brown sugar," which I took to mean heroin based on passed communications. On July 6, 2015, he contacted me using the TARGET CELL PHONE to advise the package was in the mail and would arrive on July 7 (the next day). On July 7, 2015, Postal Inspector Mooney intercepted the package at the Essex, Vermont U.S. Postal Service postal hub, bound for the same address to which STERLING had previously sent drugs. The sending location on the package was in Brooklyn, NY and the destination was the Vermont address to which Sterling previously shipped drugs. The tracking number on the package was EK711018911US. I took possession of the package, searched it, and located an ounce of suspected heroin (weight was an ounce with packaging) in a jar of Jif peanut butter. I field tested the substance, and the result was positive for heroin.

Dated at Burlington, in the District of Vermont, this 8th of July, 2015.

_____
Robert Estes, Task Force Officer
Drug Enforcement Administration


Sworn to and subscribed before me this \_\_6\_\_ day of July, 2015.

_____
Christina C. Reiss
Chief U.S. District Court Judge